UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MICHAEL NG CHIE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>CITIGROUP, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-07611-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 15 |

**INTRODUCTION**

The plaintiffs (a son and his parents) sued the defendants (collectively, Citi) because Citi allegedly did not credit the son's $40,000 payment to his parents' home-equity line of credit (or return the funds). The plaintiffs, asserting federal-question and diversity jurisdiction, claimed that Citi's conduct violated the federal Fair Debt Collection Practice Act (FDCPA), the federal Real Estate Settlement Procedures Act (RESPA), and California's Rosenthal Fair Debt Collection Practices Act (Rosenthal FDCPA), and they also claimed negligence, conversion, a common count for money had and received, breach of contract, financial elder abuse, and a violation of California's Unfair Competition Law (UCL). They seek declaratory and monetary relief.[1]

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-07611-LB

The defendants moved to dismiss the FDCPA and Rosenthal FDCPA claims as barred by the statute of limitations and all claims on the ground that the plaintiffs did not plausibly plead them under Federal Rule of Civil Procedure 12(b)(6) or allege (for the elder-abuse claim) fraud with particularity under Rule 9(b).[2] The plaintiffs withdrew the FDCPA, the Rosenthal FDCPA, and the RESPA claims but otherwise opposed the motion.[3] The court grants the motion for the following reasons: (1) the court dismisses the declaratory-relief claim because the plaintiffs seek to redress past wrongs covered by their other claims; (2) there is no plausible negligence claim because Citi owed no duty to the plaintiffs; (3) there is no plausible conversion claim because the son did not retain a possessory interest in the money after he sent it to Citi; (4) the common-count claim is predicated on dismissed claims; (5) the plaintiffs did not identify the contract or the provision that Citi breached (a point they concede); (6) the plaintiffs did not plead the financial elder-abuse claim with particularity under Rule 9(b); and (7) the UCL claim is predicated on dismissed claims.

## STATEMENT

The plaintiffs are Michael Ng Chie, Hellen Lee Chie, and Xi S. Zhu. Ms. Chie and Mr. Zhu are over 65 years old and are Mr. Chie's parents. The parents live in San Francisco and have a home-equity line of credit with Citibank. Mr. Chie helps his parents financially by making payments for them on the line of credit. He did so on October 22, 2018, when he sent the defendants a $40,000 check from his USAA Federal Savings Bank checking account to be applied to his parents' line of credit. The defendants initially rejected the check but later deposited it on October 29, 2018.[4]

Believing that the check had been returned to his USAA Federal Savings Bank account, on October 31, 2018, Mr. Chie sent Citi a second check for $40,0000, again to be applied to his parents' line of credit.[5] The defendants cashed both checks (for a total of $80,000) but credited

---

[2] Mot. – ECF No. 15 at 8.

[3] Opp'n – ECF No. 18.

[4] Compl. – ECF No. 1 at 2 (¶¶ 1–2), 5 (¶¶ 11–15). The complaint names Citi entities as defendants — Citigroup, Citibank, CitiMortgage, and CitiGroup Global Markets — but does not distinguish among them and refers to them collectively as Citibank or defendants. *Id.* at 3 (¶ 3).

[5] *Id.* (¶ 17).

only $40,000 to the parents' line of credit and did not credit the other $40,000 or return the funds to Mr. Chie's USAA Federal Savings Bank account.[6] Mr. Chie tried to track down the funds. He contacted Citi representatives, who told him on February 5, 2019 that the funds had been returned to his USAA Federal Savings Bank account "and did not further investigate the issue."[7] USAA Federal Savings Bank said that the defendants cashed both checks and retained $80,000.[8] The plaintiffs tried to get the money back, including by filing a claim on October 1, 2019 with the Consumer Financial Protection Bureau (CFPB). On October 16, 2019, the defendants responded to the CFPB's inquiry, saying that they never received the extra $40,000.[9]

Mr. Chie also contacted the office of his U.S. Congressional Representative, Adam Smith, and the office contacted Citi, USAA Federal Savings Bank, and the Federal Reserve. On April 14, 2020, USAA Federal Savings Bank sent a letter to Representative Smith's office saying that it investigated the issue and Citi had the money. On April 22, 2020, the Board of Governors of the Federal Reserve sent a letter that Citi retained both checks. On May 20, 2020, Citi — citing only its prior "incorrect and inadequate" investigation, said that it did not retain or cash both checks and "made this conclusion without doing any further investigation."[10]

Mr. Chie then hired a lawyer, who "tried many times to show Defendants why its investigation was flawed and inadequate, and why Defendants should either properly attribute or return these funds."[11] The plaintiffs then filed this lawsuit to try to get the $40,000 back. They allege that the defendants charged "further fees, expenses, and interest" to the line of credit that would not have been charged if the $40,000 had been credited.[12]

---

[6] *Id*. at 5–6 (¶¶ 13–18).
[7] *Id*. at 6 (¶ 19).
[8] *Id*. (¶ 20).
[9] *Id*. (¶¶ 22–23).
[10] *Id*. at 6–7 (¶¶ 24–28).
[11] *Id*. at 7 (¶ 29).
[12] *Id*. at 7–8 (¶¶ 30–31).

Given the plaintiffs' withdrawal of the FDCPA, the Rosenthal FDCPA, and the RESPA claims, the remaining claims (as numbered in the complaint) are as follows: (1) declaratory relief; (5) negligence; (6) conversion; (7) a common count for money had and received; (8) breach of contract; (9) financial elder abuse, Cal. Welf. & Inst. Code § 15610.30(c); and (10) a violation of the UCL, Cal. Bus. & Prof. Code § 17200. The court held a hearing on the defendants' motion to dismiss on February 18, 2020. All parties consented to magistrate jurisdiction.[13]

## JURISDICTION

A preliminary issue is the court's jurisdiction because the plaintiffs have withdrawn their federal claims, eliminating federal-question jurisdiction. They also allege diversity jurisdiction. Federal courts have original jurisdiction if there is compete diversity of citizenship among the opposing parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

The parties are completely diverse.[14] The parties do not dispute the amount in controversy. But the court must consider jurisdiction as a threshold issue. The issue here is whether the plaintiffs have met their burden to establish the amount in controversy. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

"The amount in controversy includes claims for general and special damages (excluding costs and interest), attorney[']s fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *J. Marymount, Inc. v. Bayer Healthcare*, LLC, No. C 09-03110 JSW, 2009 WL 4510126, at *4 (N.D. Cal. Nov. 30, 2009) (quotation omitted). "Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000). "The sum claimed by the plaintiff controls so long as the claim is made in good faith." *Id.* "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (cleaned up and

---

[13] Consents – ECF Nos. 7, 10.

[14] Compl. – ECF No. 1 at 2–3 (¶¶ 1–3).

quotation omitted). "[T]he legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (quoting 14A Wright, Miller, & Cooper, *Federal Practice & Procedure, Jurisdiction* § 3702, at 48-50 (2d ed. 1985)).

Here, the plaintiffs allege the loss of the $40,000, additional costs associated with the defendants' wrongful failure to credit the funds, and damages that lie in tort (including for elder abuse, resulting in punitive damages).

The court cannot conclude to a legal certainty that the amount in controversy is less than the jurisdictional requirement and thus concludes that there is diversity jurisdiction. That conclusion may change depending on the outcome of any future motion to dismiss any amended complaint.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The Citi defendants moved to dismiss the remaining claims on the following grounds: (1) claim one for declaratory relief because it is predicated only on past wrongs; (2) claim five for negligence because Citi does not owe the plaintiffs a duty of care; (3) claim six for conversion because the plaintiffs did not have a possessory right to the $40,000 at the time of the alleged conversion, and the Uniform Commercial Code (UCC) in any event preempts the claim; (6) claim seven for the common count for money had and received because it is predicated on underlying claims that must be dismissed; (7) claim eight for breach of contract because the plaintiffs did not

plausibly plead a breach of the line-of-credit agreement; (8) claim nine for financial elder abuse because the plaintiffs did not plead the claim with the requisite particularity under Rule 9(b); and (9) claim 10 for a violation of the UCL because it is predicted on the dismissed claims.[15] The court grants the motion to dismiss.

### 1. Claim One: Declaratory Relief

The court dismisses the claim for declaratory relief because the plaintiffs seek to redress past wrongs covered by their other claims.

The parties do not dispute that the federal Declaratory Judge Act applies in diversity cases.[16] 28 U.S.C. § 2201; *Guccione v. JPMorgan Chase Bank, N.A.*, No. 14-cv-04587-LB, 2015 WL 1968114, at *20–21 (N.D. Cal. May 1, 2015) (citing *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014)). The Act permits a federal court to "declare the rights and legal relations" of parties to "a case of actual controversy." *Khalsa v. Hali*, No. 13-cv-03575-PSG, 2014 WL 3883713, at *2 (N.D. Cal. Aug. 6, 2014) (quoting 28 U.S.C. § 220; other quotation omitted). A court applies a two-step inquiry to determine whether a declaratory judgment is appropriate: (1) it considers whether a case or controversy exists within the court's jurisdiction, and (2) if it does, it must decide whether to exercise jurisdiction. *Id.* (quotation omitted).

Here, the plaintiffs generally allege tortious conduct from the alleged wrongful retention of the $40,0000: negligence, conversion, and financial elder abuse.[17] Past tortious conduct does not provide an adequate basis for a declaratory relief action. "[N]o basis for declaratory relief exists where only past wrongs are involved and one single judgment will likely resolve the parties' dispute without any impact on future conduct." *Id.*; *Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007) (in case involving contract and tort claims, the court dismissed the claim for declaratory relief; "Declaratory relief is

---

[15] Mot. – ECF No. 15.

[16] Opp'n – ECF No. 18 at 11–12; Reply – ECF No. 19 at 7–8.

[17] As discussed below, the plaintiffs do not plausibly allege a breach-of-contract claim predicated on the home-equity line of credit, which is the operative contract.

inappropriate where other adequate remedies are available to redress past conduct. Moreover, a court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties.") (internal citations omitted).

The court dismisses the declaratory-relief claim without prejudice.

### 2. Claim Five: Negligence

The court dismisses the negligence claim because the plaintiffs did not plausibly plead that the defendants owed them a duty of care.

The elements of negligence are duty, breach, causation, and damages. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013). Lenders generally do not owe borrowers a duty of care unless their involvement in a transaction goes beyond their "conventional role as a mere lender of money." *See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal. App. 3d 1089, 1095–96 (1991). Still, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.,* 228 Cal. App. 4th 941, 945 (2014). A duty may arise even where the lender remains within its "conventional role" of merely loaning money. *Id.* For example, in *Alvarez*, the court held that in light of California's Homeowner Bill of Rights, once a lender undertakes to consider a loan-modification request, it owes the borrower a duty to use reasonable care in handling that request. *Id.* at 945–52.

The plaintiffs contend that Citi owed a duty of care to the parents, Ms. Chie and Mr. Zhu.[18] But they allege only that "Defendants as the bank and servicer of the [home-equity line of credit], had a duty to Plaintiffs, among other things, [to] account for and credit or refund funds that were sent to Defendants."[19] These allegations are about Citi's acting in its capacity as a conventional lender and thus do not plausibly plead a duty of care. *Nymark*, 231 Cal. App. 3d at 1095–96; *see Gosal v. Wells Fargo Bank, N.A.*, No. 18-cv-00908 JAM AC (PS), 2018 WL 2984875, at *5 (E.D.

---

[18] Opp'n – ECF No. 18 at 13 (asserting claim only as to the parents). In any amended complaint, the plaintiffs must specify the plaintiffs for the specific claims.

[19] Compl. – ECF No. 1 at 12 (¶ 57).

Cal. June 14, 2018) (no plausible negligence claim where the "complaint states only that defendant was negligent in 'failing to properly and accurately credit payments toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.' Plaintiff . . . fails to satisfy the duty element of her negligence claim") (cleaned up), *report and recommendation adopted*, 2018 WL 4773350 (E.D. Cal. Aug. 15, 2018); *Milyakov v. Quality Loan Serv. Corp.*, No. C 17-06533 WHA, 2018 WL 732500, at *4 (N.D. Cal. Feb. 6, 2018) (dismissing negligence claim against loan servicers because "[t]he complaint does not allege that defendants took any action toward plaintiffs outside of a traditional money lending activity").

Moreover, the narrow exception in *Alvarez* — a lender's obligation to use reasonable care once it decides to handle a loan-modification request — does not suggest any additional duty here. *Alvarez*, 228 Cal. App. 4th at 945–52; *Daniels v. Select Portfolio Serv., Inc.*, 246 Cal. App. 4th 1150, 1182 (2016) (finding that defendant owed "a duty of care with respect to the loan-modification application process").

Citi also contended in its reply brief that the economic-loss rule bars the plaintiffs' negligence claim.[20] It points to the plaintiffs' concession that they are asking only that Citi do its job as a servicer of the home-equity line of credit by receiving their payment and applying it to the loan.[21]

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *accord In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) ("Purely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action for such claims."). The purpose of the rule is to prevent "the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co.,* 34 Cal. 4th at 988 (cleaned up).

---

[20] Reply – ECF No. 19 at 9.

[21] *Id.* at 9–10 (citing Opp'n – ECF No. 18 at 13).

ORDER – No. 20-cv-07611-LB                    9

"[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (cleaned up). "An omission to perform a contract obligation is never a tort[] unless that omission is also an omission of a legal duty." *Id.*; *accord JMP Secs. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. July 23, 2012) ("the economic loss rule, in summary, is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement") (cleaned up).

The economic-loss rule may bar the negligence claim. But because Citi raised the issue in its reply brief, and the plaintiffs have not been able to respond, the court defers consideration of the issue to any amended complaint.

### 3. Claim Six: Conversion

Citi contends that the plaintiffs do not plausibly plead conversion because Mr. Chie paid the $40,000 to Citi to apply to the home-equity line of credit, and the UCC in any event preempts the claim.[22] The plaintiffs do not state a claim for conversion.

"[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *McCafferty v. Gilbank*, 249 Cal. App. 2d 569, 576 (1967)). To prove conversion, a plaintiff "must establish: (1) ownership of or right to possess the property in question at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 910 (N.D. Cal. 2010) (citing *Oakdale Village Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996)).

In circumstances like these, when a person tenders money to a bank, intending that it be credited to the person's loan, the person does not retain possessory interest in the money and

---

[22] Mot. – ECF No. 15 at 17–19.

instead has surrendered that interest to the bank. As a result, there is no claim for conversion. *See Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 233–34 (2014).

In *Rutherford Holdings*, for example, a buyer contracted with a vendor to buy a mobile-home park and paid a $3 million deposit that was nonrefundable unless the vendor materially breached the purchase agreement or refused to close. The closing date passed, and neither party performed. The buyer sued under theories of recovery that included conversion. *Id.* at 225, 233. Because the escrow agreement did not have a contractual provision for return of the money, title to the deposit transferred to the vendor on deposit. *Id.* at 234–35. The buyer thus could not allege that he owned or possessed the deposit at the time of the alleged conversion and did not state a conversion claim. *Id.* at 235.

Other cases reach similar results in the context of deposits with banks. *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1092–93 (S.D. Cal. 2020) (dismissing conversion claim because "[a]ny money became the literal property of [Bank of America] upon deposit in the bank and not subject to a claim of conversion"); *Chavez v. Bank of Am. Corp.*, No. C 10-0653-JCS, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012) ("California law is well-settled in this area that a claim against the bank for conversion will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor has no conversion claim against a bank under California law").

Because there is no plausible claim for conversion, on this briefing, the court does not reach Citi's argument that the UCC, Cal. Com. Code § 3420(a), preempts the conversion claim.

### 4. Claim Seven: Common Count for Money Had and Received

The court dismisses the common count for money had and received because the claim is predicated on underlying claims that the court has dismissed.

The elements of the claim are as follows: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the plaintiff's benefit; and (3) the defendant has not given the money to the plaintiff. *English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016); *accord Rutherford Holdings*, 223 Cal. App. 4th at 230. The claim is viable "whenever one person has received money which

belongs to another, and which in equity and good conscience should be paid over to the latter." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1435 (2013).

Because the plaintiff did not plausibly plead the underlying claims, the court dismisses the common-count claim without prejudice.[23] *See McBride v. Boughton*, 123 Cal. App. 4th 379, 394–95 (2004) ("When a common count [for money had and received] is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable . . . [plaintiff's] common count must stand or fall with his first cause of action").

### 5. Claim Eight: Breach of Contract

The plaintiffs concede that they did not plead a breach-of-contract claim, reference (in their opposition) the contract terms that were breached, and ask to amend the claim.[24] Citi contends that the plaintiffs cannot cure the deficient complaint through facts in the opposition.[25] Technically, this is true. *But cf. Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (incorporation-by-reference doctrine).

To state a claim for breach of contract, a plaintiff must show the following: (1) a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach. *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

The plaintiffs did not identify the contract provision in the complaint that Citi allegedly breached. The court dismisses the claim.

---

[23] *Id.* at 19–20 (making this argument as a ground for dismissal); Reply – ECF No. 19 at 13–14 (same).
[24] Opp'n – ECF No. 18 at 19.
[25] Reply – ECF No. 19 at 14.

ORDER – No. 20-cv-07611-LB                 12

### 6. Claim Nine: Financial Elder Abuse

The defendants move to dismiss the plaintiffs' ninth claim for financial elder abuse because the plaintiffs failed to plead Citi's scienter with particularity under Rule 9(b).[26] The plaintiff did not plead Citi's wrongful intent, and the court thus dismisses the claim.

Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1), (2); *York v. Bank of Am.*, No. 14-cv-02471-RS, 2016 WL 392928, at *4 (N.D. Cal. Feb. 2, 2016). "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over. Cal. Welf. & Inst. Code §§ 15610.27, .30(b). "Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to defraud, or both." *York*, 2016 WL 392928 at *4 (citing *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012)).

The parties do not dispute that Rule 9(b)'s heightened pleading standard applies.[27] And the plaintiffs do not meaningfully oppose Citi's argument that the complaint alleges nothing about whether Citi took money for a "wrongful use" or anything about Citi's intent.[28] The court dismisses the claim.

### 7. Claim Ten: UCL

The court dismisses the UCL claim too. There are no predicate claims supporting a claim under the UCL's unlawful prong, the plaintiffs did not plead fraud with particularity and thus did not plead a claim under the UCL's fraudulent prong, and any claim under the UCL's unfair prong

---

[26] Mot. – ECF No. 15 at 21.

[27] *Id*. at 22; Reply – ECF No. 19 at 14–15.

[28] Mot. – ECF No. 15 at 21–22; Opp'n – ECF No. 18 at 19–20 (instead focusing on the quantum of proof); Reply – ECF No. 19 at 16–17.

ORDER – No. 20-cv-07611-LB                      13

overlaps completely with the fraudulent prong. *See Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 982 (N.D. Cal. 2019); *Hadley v. Kellogg Sales Co.* 243 F. Supp. 3d 1074, 1094, 1104–05 (N.D. Cal. 2017).

## CONCLUSION

The court dismisses the FDCPA, the Rosenthal FDCPA, and the RESPA claims (claims two through four) with prejudice. The court dismisses the other claims without prejudice and with leave to amend within 21 days after the April 14, 2021 case-management conference. If the parties' investigation into the missing funds is not complete by April 7, 2021, the parties may stipulate to continue the case-management conference and the due date for the amended complaint to allow resolution of the case before the costs of litigation eclipse any recovery.

If the plaintiffs file an amended complaint, they must file as an attachment a blackline of the amended complaint against the original complaint.

This disposes of ECF No. 15.

**IT IS SO ORDERED.**

Dated: February 18, 2021

_____
LAUREL BEELER
United States Magistrate Judge